UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARCY ROSE et al.,

                      Plaintiffs,

      -against-

JAMES JULLIANO,
Fire Chief of the Incorporated Village of Amityville,
Suffolk County, New York et al.,

                      Defendants.
----------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION & ORDER**
**05-CV-02732 (SJF)**

I.    Introduction

On June 7, 2005, *pro se* plaintiffs Marcy Rose ("Rose") and Melody Fiorello ("Fiorello") (collectively, "Plaintiffs") commenced this action against defendants James Juliano, Fire Chief of the Incorporated Village of Amityville, New York, ("Chief Juliano"), and John Does 1-10 (collectively, "Defendants") asserting various federal and state statutory and constitutional claims arising out of an alleged "Gestapo-type police raid in response to a simple request for assistance to the Fire Department for an injured individual ..." at Plaintiffs' residence in Amityville, New York. (Compl. ¶ 7.) Chief Juliano now moves, unopposed, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons set forth herein, Chief Juliano's motion is GRANTED.

1

II.  Background[1]

Plaintiffs, a mother (Rose) and daughter (Fiorello), reside together in Amityville, New York. According to a statement attached to the Complaint ("Fiorello Statement"), on February 11, 2005, Fiorello "called 411 for the Amityville Fire Department" ("Fire Department"). (Fiorello Statement p. 1.) Fiorello claims that she was connected to the Police Department, whom she advised that she "needed the Fire Dept [sic] for an ambulance." (Id.) According to Fiorello, she told the police officer that: "My name is Melody. My boyfriend's knee cracked last night when he bent down and this morning when we woke up he cannot [sic] get out of the bed." (Id.) A police officer allegedly asked Fiorello for her name and address and told Fiorello that "[w]e will send out help ...." (Id.)

In response to Fiorello's telephone call, the Fire Department, including Chief Juliano, arrived at Plaintiffs' residence at 10:56 a.m. (See Fire Department Call Run Sheet ("Call Run Sheet"), attached as Ex. F to Decl. of Edward Kim, dated Nov. 30, 2007.) In addition, a police car and an ambulance also arrived at Plaintiffs' residence. Fiorello alleges that approximately eight men entered her residence. Fiorello claims that approximately five of these men entered the basement, where Fiorello's boyfriend Geraldo Vega ("Vega") was located with a knee injury, performed some general tests on Vega, and assisted Vega up the stairs. Vega was subsequently taken to a local hospital by ambulance.

---

[1] The facts are derived from Chief Juliano's statement of material facts pursuant to Local Rule 56.1 and the accompanying affirmation and other evidentiary material filed in support of Chief Juliano's motion for summary judgment, including Plaintiffs' affidavits that were filed in support of Plaintiffs' previously filed motion for summary judgment, which this Court denied on July 26, 2006. In addition, the Court takes judicial notice of all documents filed in this action for the purpose of deciding the instant motion.

2

Fiorello alleges that, once everyone "walked out of my home," she asked Amityville Police Officer Joseph Slack ("Officer Slack") when she should go to the hospital and he responded that she should "give it at least an hour." (Fiorello Statement p. 1.) According to Fiorello, Officer Slack asked her if her mother was "Marcy Rose," and if she "had problems in the past with tenants ...?" (Id.) Fiorello alleges that Officer Slack stated that "you have an apt [sic] that is illegal and have gotten in trouble before within [sic] the village" and asked if Plaintiffs had subsequently made the apartment legal. (Id.) Fiorello also alleges that Officer Slack explained that "I am not starting anything-these are just necessary questions." (Id.) Fiorello asserts that she responded that "everything was straightened out over a year ago," and that Officer Slack left her residence shortly thereafter. (Id.)

While at Plaintiffs' residence, Chief Juliano observed "several violations in the basement" and notified John Lauria, the Building Inspector for the Village of Amityville, ("Inspector Lauria") of such violations at 11:14 a.m. (Aff. of Chief Juliano, filed July 10, 2008 ("Chief Juliano Aff."), ¶¶ 6-7; see also Call Run Sheet.) Inspector Lauria arrived at Plaintiffs' residence approximately ten to fifteen minutes later.

According to Fiorello, after she believed that everyone had left her residence, she was surprised to find Officer Slack had returned and was standing in her kitchen. Fiorello claims that she found her "staircase ... full of [five] men," including Inspector Lauria. (Fiorello Statement at p. 1.) Chief Juliano was waiting outside of Plaintiffs' residence.

By this time, the basement door had been locked and Fiorello claims that Officer Slack and Inspector Lauria were trying to open it. Fiorello asserts that Officer Slack asked if Vega lived at Plaintiffs' residence, demanded a key to open the basement door and threatened to "break

3

down the door." (Id.) Fiorello further asserts that, after demanding that everyone leave her residence, she telephoned her mother Rose at work, who spoke with Officer Slack and Inspector Lauria. According to Fiorello, Inspector Lauria, after speaking with Rose, stated that "I have nothing else to do here," gave Fiorello the telephone and left the residence. (Id. at p. 2.)

According to Chief Juliano, Inspector Lauria was in Plaintiffs' residence for "several moments" before exiting and informing Chief Juliano that he was unable to gain access to the basement. (Chief Juliano Aff. ¶ 7.) The Fire Department, including Chief Juliano and Inspector Lauria, left Plaintiffs' residence at approximately 11:32 a.m. (See Call Run Sheet.)

Fiorello alleges that everyone vacated her residence except for Office Slack, who Fiorello claims, threatened to "HAUNT ME FOR AS MANY YEARS THAT [SIC] I LIVE IN AMITYVILLE. HE WILL BE MY AMITYVILLE HORROR." (Fiorello Statement p. 1) (emphasis in original). According to Fiorello, Officer Slack stated that "this is a promise" and that "you don't know what harassment is [sic] but remember every time you pull out of your driveway, I will be watching you" and then Officer Slack "slammed the door and left my property." (Id.) Fiorello claims that later that afternoon, when she went to visit Vega at the hospital, that Vega informed her that Officer Slack went to the emergency room to talk to Vega approximately ten minutes after the ambulance left Plaintiffs' residence.

Inspector Lauria subsequently issued several summons to Plaintiffs for various violations of the Amityville Village Code of Ordinances ("Village Code") and the Property Maintenance Code of New York State ("NYSPMC") that were observed on February 11, 2005, including "no permit to convert cellar to habitable space," "no smoke alarm in hallway leading to cellar," and "permitted two (2) family dwelling without Zoning Board of Appeals special exception."

4

(Summonses dated February 11, 2005, attached as Exs. to Pls.' Mot. for Summ. J., filed Sept. 7, 2005.)

Fiorello alleges that "over the past month, [Officer Slack] is constantly driving past my home and sitting the distance of 2 homes away at the gas station, always facing my home." (Id.)

III. Discussion

A. Legal Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287

F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried ... If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible ..., or 'upon the mere allegations or denials of the [nonmoving] party's pleading.'" Id. (citing Fed. R. Civ. P. 56(e)). "[W]hen a motion for summary judgment is unopposed," however, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).

B. Plaintiffs' *Pro Se* Status

Where a plaintiff is proceeding *pro se*, the court must review the *pro se* party's supporting papers liberally, and "interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation and quotation marks omitted); see also Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001). Nevertheless, a *pro se* plaintiff's "bald assertion," completely without evidentiary support is not sufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); see Columbo v. United States Postal Serv., 293 F. Supp. 2d 219, 222 (E.D.N.Y. 2003) ("pro se

status does not exempt a party from compliance with relevant rules of procedural and substantive law") (citation and quotation marks omitted); see also Karl v. Asarco Inc., No. 02 Civ. 5565, 2004 WL 2997872, at *3 (S.D.N.Y. Dec. 23, 2004) (liberal standard does not excuse a pro se plaintiff from "following the procedural formalities of summary judgment"); Saldana v. Local 32B-32J Serv. Employer Int'l Union, No. 03 Civ.1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan.12, 2005) ("Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of the complaint. Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts.").

    C.    Equal Protection

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To establish an equal protection violation based upon a theory of "selective enforcement," a plaintiff must show that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001) (citations and quotation marks omitted).

Plaintiffs have not proffered any evidence indicating that they were treated differently by Chief Juliano from other similarly situated individuals, or that any alleged selective treatment by

Chief Juliano was based on impermissible considerations or on malicious or bad faith intent to injure Plaintiffs. Plaintiffs' conclusory assertions and unsubstantiated statements are not sufficient to raise a triable issue of fact to defeat a motion for summary judgment. See Henry v. Daytop Vill. Inc., 42 F.3d 89, 97 (2d Cir. 1994) (stating that "[f]or a selective enforcement claim to reach a jury, the plaintiff must adduce evidence consisting of more than mere conclusory or unsubstantiated statements") (citation omitted).

Accordingly, Plaintiffs' equal protection claim is dismissed.

D. Due Process

Likewise, Plaintiffs' due process claim fails. To establish a deprivation of property without due process, a plaintiff "must first identify a property right, second show that the state has deprived [the plaintiff] of that right, and third show that the deprivation was effected without due process." Mehta v. Surles, 905 F.2d 595, 598 (2d Cir 1990) (citing Fusco v. State of Connecticut, 815 F.2d 201, 205 (2d Cir. 1987)). In support of their due process claim, Plaintiffs allege that, *inter alia*, they were deprived of their right to property based on the summonses issued by Inspector Lauria, and of Fiorello's right to reside "at [sic] premises owned by a blood relative." (Compl. ¶ 6.) However, Plaintiffs have not submitted any evidence sufficient to show that they were deprived of a property right without due process. There is no evidence in the record establishing that the issuance of summonses resulted in a deprivation of a property right. Further, Plaintiffs have not proffered any evidence indicating that Fiorello was deprived of her right to reside with Rose or that Rose was denied any rights associated with her ownership of her residence in Amityville. Plaintiffs' conclusory assertions and unsubstantiated statements are not

sufficient to raise a triable issue of fact to defeat a motion for summary judgment.

Accordingly, Plaintiffs' due process claim is dismissed.

E. Fourth Amendment

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Plaintiffs claim, *inter alia*, that Chief Juliano conducted an "unlawful search, entry and/or seizure without a lawful warrant ..." (Compl. ¶ 5.) Specifically, Plaintiffs allege that "a Gestapo-type police raid in response to a simple request for assistance to the Fire Department for an injured individual" occurred "pursuant to policies and procedures instituted by [Chief Juliano] ... and in condonation thereof ..." (Id. ¶ 7.)

The parties do not dispute that Chief Juliano entered Plaintiffs' residence without a warrant or that Plaintiffs permitted Chief Juliano to enter the premises in response to the emergency telephone call that Fiorello made requesting assistance from the Fire Department. The parties also do not dispute that Vega was located in the basement of Plaintiffs' residence and that Fiorello permitted several men to enter the basement to assist Vega. Further, the parties do not dispute that the alleged violations that Chief Juliano observed were in plain view. Plaintiffs, however, allege that Chief Juliano used the response to the emergency telephone call "as a subterfuge for a multiplicity of law enforcement officers to raid and or converge upon [Plaintiffs' residence]," and as "an effort to create code violations which neither existed, nor was there probable cause for such entry at that time." (Id. ¶ 22.)

However, Chief Juliano did not need a warrant to enter Plaintiffs' residence because

9

Plaintiffs voluntarily consented to the Fire Department, including Chief Juliano, entering their residence. Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) ("The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects.... The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, ... or from a third party who possesses common authority over the premises ....") (citations omitted). In addition, Chief Juliano did not need a search warrant to observe building violations that were in plain view of his lawful entry into Plaintiffs' residence. See Arizona v. Hicks, 480 U.S. 321, 325, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (citing Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983)). Therefore, Chief Juliano did not violate Plaintiffs' right against unreasonable searches.

In addition, Chief Juliano did not violate Plaintiffs' right against unreasonable seizures. There is no evidence in the record that Chief Juliano "seized" any of Plaintiffs' property. See United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.") (citations omitted).

Accordingly, Plaintiffs' Fourth Amendment claim is dismissed.

F.  First Amendment

"To establish a First Amendment retaliation claim under section 1983, a plaintiff must show: (I) conduct by the plaintiff protected by the First Amendment, and (ii) that the defendant's conduct was motivated by or substantially caused by the plaintiff's exercise of free speech."

Economic Opportunity Com'n of Nassau County, Inc. v. County of Nassau, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000) (citing Board of County Comm'rs v. Umbehr, 518 U.S. 668, 676, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indust. Dev. Agency, 77 F.3d 26, 30 (2d Cir.1996); Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir.1994); Housing Works, Inc. v. City of N.Y., 72 F. Supp. 2d 402, 422 (S.D.N.Y.1999)). Circumstantial evidence of a retaliatory motive "may be found when defendants are aware that plaintiff has engaged in protected speech and defendants' challenged behavior closely follows that protected speech," or "a plaintiff can also show retaliatory intent by establishing unequal treatment, or an ongoing campaign of adverse action." See Economic Opportunity Com'n of Nassau County, Inc, 106 F. Supp. 2d at 437-38 (citing McCullough v. Wyandanch Union Free School Dist., 187 F.3d 272, 280 (2d Cir. 1999); Housing Works, 72 F. Supp. 2d at 422-23, Gagliardi, 18 F.3d at 195).

Plaintiffs allege that "a situation of animosity and harassment has existed since sometime in 2004" when, *inter alia*, the Village of Amityville ("Village") issued Rose a summons ("Summons") as a result of a former landlord-tenant relationship that occurred at Plaintiffs' residence. (Aff. of Rose, filed July 10, 2008, ¶ 2.) Plaintiffs allege that Defendants are retaliating against them because, *inter alia*, during a proceeding (the "Proceeding") relating to the issuance of the Summons that Plaintiffs "raised serious questions as to the Village's violation of [Plaintiffs'] rights ...." (Id. at ¶ 6.) However, Plaintiffs do not allege any specific facts concerning the alleged protected speech that they engaged in at or relating to the Proceeding. Plaintiffs also do not allege any specific instances or proffer any evidence of animosity and/or harassment, and the record is devoid of any circumstantial evidence of retaliation or retaliatory

11

intent. In addition, Chief Juliano, in a sworn affidavit, stated that he was unaware of any prior legal disputes between the Village and Plaintiffs, and Plaintiffs have proffered no evidence to the contrary. Plaintiffs' conclusory allegations and unsubstantiated statements that Chief Juliano was acting in concert with or in condonation of any alleged First Amendment violation are insufficient to survive a motion for summary judgment.

Accordingly, Plaintiffs' First Amendment claim is dismissed.

G.     Conspiracy

Plaintiffs allege that Chief Juliano conspired with Defendants to violate their constitutional rights. Specifically, Plaintiffs allege, *inter alia*, that the response to their telephone call for emergency assistance was a "pre-planned police raid" of her residence that was "directed" by Chief Juliano to be a "police matter" and "building inspector matter." (Aff. of Fiorello, filed July 10, 2008, ¶¶ 18, 20.)

"To prove a [42 U.S.C. § 1983 ("§ 1983")] conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citing Carson v. Lewis, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997)).

Plaintiffs do not dispute that Chief Juliano was present at Plaintiffs' residence on February 11, 2005 because Plaintiffs "called 411 for the Amityville Fire Department." (Fiorello

Statement p. 1.) Officer Slack was also present because, when "emergency calls are made to the Fire Department, the police are also summoned to the scene." (Chief Juliano Aff. ¶ 4.) In addition, Inspector Lauria was present because, when the Fire Department observes violations, the Fire Department contacts the Building Inspector to inspect the premises. (Id. at ¶ 6.) Plaintiffs have not proffered any evidence to show that Chief Juliano, Officer Slack, and Inspector Lauria were present at Plaintiffs' residence for any reason other than Plaintiffs' emergency telephone call requesting assistance. In addition, the record is devoid of any proof of an agreement among Defendants to act in concert to violate Plaintiffs' constitutional rights or that an overt act was done in furtherance of such an agreement. Plaintiffs' conclusory allegations and unsubstantiated statements are insufficient to survive a motion for summary judgment. See Torres v. New York State Dept. of Correctional Servs., 166 F. App'x. 510, 512 (2d Cir. 2006) (citing Kia P. v. McIntyre, 235 F.3d 749, 763 (2d Cir. 2000); see also Gil v. County of Suffolk, No. 06 Civ. 1683, 2008 WL 4866036, at * 9 (E.D.N.Y. Nov. 6, 2008) (citing Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993); Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990); Fariello v. Rodriguez, 148 F.R.D. 670, 677 (E.D.N.Y. 1993), aff'd, 22 F.3d 1090 (2d Cir. 1994)).

Insofar as Plaintiffs claim a conspiracy under 42 U.S.C. § 1985 ("§ 1985"), Plaintiffs' claim cannot survive a summary judgment motion for the same reasons that their claim fails under § 1983. See Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).

Accordingly, Plaintiffs' conspiracy claim is dismissed.

H.  Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v.Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 72 L.Ed.2d 396 (1982), or where it was objectively reasonable for them to believe that their acts did not violate those rights. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed. 523 (1987); Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). However, "there is no necessity for further inquiries concerning qualified immunity" because Plaintiffs have not shown that Chief Juliano violated their constitutional rights. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

I.  State Law Claims

Plaintiffs assert various state law claims, including, *inter alia*, defamation, libel, slander, trespass, and prima facie tort. Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367. However, a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Since Plaintiffs' federal claims fail as a matter of law, there is no independent basis for federal jurisdiction over Plaintiffs' state law claims. Accordingly, Plaintiffs' state law claims are dismissed without prejudice. See, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715,

726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

J.  Defendants John Does 1-10

"[A]s a general rule, the use of 'John Doe' to identify a defendant is not favored," however, "'courts have recognized that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint. In such situations, the plaintiff should have an opportunity to pursue discovery to identify the unknown defendants.'" Feliciano v. County of Suffolk, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005) (quoting Covington v. Warden of C-95, No. 93 Civ. 1958, 1996 WL 75211, at *4 (E.D.N.Y. Feb. 8, 1996); citing Petway v. City of New York, No. 02 Civ. 2715, 2005 WL 2137805, at *4 (E.D.N.Y. Sept. 2, 2005)). Since the commencement of this action over three years ago, there is no evidence in the record indicating that Plaintiffs have made any effort to identify the remaining unnamed Defendants or conduct discovery for such purpose.

Throughout Plaintiffs' Complaint and Affidavits they make references to alleged wrongdoing by Officer Slack and Inspector Lauria, however, Plaintiffs have not sought leave to amend the Complaint to name these individuals as defendants, see Fed R. Civ. P. 15, nor have they attempted to serve these individuals, see Fed. R. Civ. P. 4(m). Accordingly, the Court will dismiss the action against defendants John Does 1-10 unless Plaintiffs show good cause for thier failure to serve these defendants in accordance with the Federal Rules of Civil Procedure. See id. ("If a defendant is not served within 120 days after the complaint is filed, the court ... must

dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period ..."); see also Petway v. City of New York, No. 02 Civ. 2715, 2005 WL 2137805, at *5 (E.D.N.Y. Sept. 2, 2005); Sease v. Phillips, No. 06 Civ. 3663, 2008 WL 2901966, at * 9 (S.D.N.Y. July 25, 2008).

IV. Conclusion

The motion (Docket No. 26) of defendant James Juliano for summary judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED. It is further Ordered that Plaintiffs have thirty (30) days to show good cause for their failure to serve defendants John Does 1-10. Plaintiffs' failure to show good cause as directed by this Order will result in dismissal of the case in its entirety.

**SO ORDERED.**

Sandra J. Feuerstein
United States District Judge

December 8, 2008
Central Islip, New York

Copies to:

Marcy Rose
35 Bayview Avenue
South Amityville, NY 11701

Melody Fiorello
35 Bayview Avenue
Amityville, NY 11701

Edward Kim
Furey, Furey, Leverage, Manzione, Williams & Darlington, P.C
600 Front Street
Hempstead, NY 11550

James M Furey
Furey, Furey, Leverage, Manzione, Williams & Darlington P.C.
600 Front Street
Hempstead, NY 11550